## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL and CARMEL LABORATORIES, LLC, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 17-868-CFC-SRF |
| L'ORÉAL S.A. and L'ORÉAL USA, INC., | ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this patent infringement action are the following motions: (1) the motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by defendant L'Oréal USA, Inc. ("L'Oréal USA") (D.I. 15); and (2) the motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6), filed by defendant L'Oréal S.A. (together with L'Oréal USA, "L'Oréal" or "defendants") (D.I. 23). For the following reasons, I recommend that the court deny the Rule 12(b)(6) motions to dismiss of L'Oréal USA and L'Oréal S.A., and grant L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss.

### II.    BACKGROUND

#### A. Patents-In-Suit

On July 23, 2002, the United States Patent and Trademark Office issued United States Patent No. 6,423,327 ("the '327 patent"), entitled "Treatment of Skin with Adenosine or Adenosine Analog." The '327 patent was filed on September 28, 2000 and is a continuation of Application No. 09/179,006, which was filed on October 26, 1998 and is now abandoned. The patent lists as inventors James G. Dobson, Jr. and Michael F. Ethier ("inventors"), and identifies

University of Massachusetts as the assignee. Carmel Laboratories, LLC ("Carmel Labs") is the exclusive licensee of the '327 patent. (D.I. 13 at ¶ 36) The '327 patent describes methods for improving the condition of unbroken, mammalian skin by applying adenosine "in an amount effective to enhance the condition of the skin without increasing dermal cell proliferation, wherein the adenosine concentration applied to the dermal cells is $10^{-4}$ M to $10^{-7}$ M." ('327 patent, col. 10:18-26)

United States Patent No. 6,645,513 ("the '513 patent") (together with the '327 patent, the "patents-in-suit") was filed on June 28, 2002 and issued on November 11, 2003. The '513 patent is a continuation of the '327 patent. The '513 and '327 patents share the same title, abstract, inventors, specification, assignee, and exclusive licensee.

Claims 1 and 9 of the '513 and '327 patents ("the asserted claims") are also identical except for the claimed concentrations of adenosine applied to the dermal cells. Specifically, the '327 patent claims an adenosine concentration of $10^{-4}$ M to $10^{-7}$ M, ('327 patent, col. 10:25-26), and the '513 patent claims a concentration of $10^{-3}$ M to $10^{-7}$ M, ('513 patent, col. 10:25-26).

## B. Parties

University of Massachusetts Medical School is a public institution of higher education in Massachusetts. (D.I. 13 at ¶ 1). University of Massachusetts is identified as the assignee of the patents-in-suit. ('327 patent, Assignee; '513 patent, Assignee)

Carmel Labs (together with University of Massachusetts Medical School, "plaintiffs") is a for-profit Massachusetts limited liability company founded and wholly-owned by Teresian Carmelites, Inc. ("Teresian Carmelites"). (D.I. 13 at ¶ 3) Teresian Carmelites is a Massachusetts non-profit religious organization dedicated to prayer and service to the poor and marginalized. (*Id.* at ¶¶ 2, 14) Carmel Labs' profits financially sustain Teresian Carmelites and fund its

2

charitable endeavors. (*Id.* at ¶ 15) Carmel Labs is purportedly the exclusive licensee of the patents-in-suit for all cosmetic applications, and has been since 2008. (*Id.* at ¶ 15) Using the patented adenosine technology, Carmel Labs developed "Easeamine," an anti-aging face cream that it released for sale in 2009. (*Id.* at ¶ 16)

L'Oréal USA is a wholly-owned subsidiary of L'Oréal S.A., a French corporation headquartered in France. (*Id.* at ¶¶ 5, 7) L'Oréal USA is Delaware corporation with its principal place of business in New York, New York. (*Id.* at ¶ 6) L'Oréal USA develops and manufactures hair care, skin care, cosmetics, and fragrances distributed globally. (*Id.* at ¶ 18) Plaintiffs accuse eighteen L'Oréal brands of selling infringing products, including but not limited to the following brands with products containing adenosine: Biotherm; The Body Shop; Carita; Decleor; Garnier; Giorgio Armani; Helena Rubinstein; IT Cosmetics; Kiehl's; L'Oréal Paris; La Roche-Posay; Lancôme; Maybelline; Roger&Gallet; Sanoflore; Shu Uemura; Vichy; and Yves Saint Laurent (the "Unnamed Accused Products"). (*Id.* at ¶ 31) However, the only product identified by name in the First Amended Complaint is L'Oréal Paris' RevitaLift Triple Power Deep-Acting Moisturizer (together with the Unnamed Accused Products, the "Accused Products"). (*Id.* at ¶ 34)

## C.    Facts

Dr. James G. Dobson, Jr., the former Chairman of the Department of Physiology at University of Massachusetts Medical School, and his colleague, Dr. Michael Ethier, discovered that topical application of adenosine to dermal cells in specified concentrations can enhance the condition of the skin without increasing dermal cell proliferation. (*Id.* at ¶ 10) Their discoveries are embodied in the '327 and '513 patents. (*Id.* at ¶ 11) Drs. Dobson and Ethier assigned their intellectual property rights to University of Massachusetts. (*Id.* at ¶ 4)

3

Teresian Carmelites learned of the adenosine technology Drs. Dobson and Ethier developed through its relationship with Dr. Dobson, and negotiated a license for the technology. (*Id.* at ¶ 15) Since 2008, Carmel Labs has been the exclusive licensee of the patents-in-suit for all cosmetic applications. (*Id.*) After securing a license to the patents-in-suit, Carmel Labs used the patented adenosine technology to develop an anti-aging face cream called "Easeamine," which was released for sale in 2009. (*Id.* at ¶¶ 15-16)

L'Oréal has cited to the '327 and '513 patents in several of its own issued patents and at least one now-abandoned application. (*Id.* at ¶¶ 20-22, Exs. 7-10) In fall of 2003, an agent of L'Oréal contacted Dr. Dobson to discuss the patents-in-suit, but failed to obtain a license. (*Id.* at ¶ 23) Following this conversation, L'Oréal began creating, marketing, and selling the Accused Products. (*Id.* at ¶ 24) On October 15, 2010, L'Oréal publicly announced the upcoming launch of its new Youth Code line of skin care containing adenosine. (*Id.* at ¶ 25; Ex. 5) In March 2015, the president of Teresian Carmelites and Carmel Labs sent a letter to L'Oréal's CEO stating his belief that L'Oréal's products infringe the patents-in-suit, and affirming that Carmel Labs is the exclusive licensee of the patents-in-suit. (*Id.* at ¶ 30)

### D. Procedural History

On June 30, 2017, University of Massachusetts Medical School and Carmel Labs filed the present action against L'Oréal U.S.A and L'Oréal S.A., asserting causes of action for the alleged infringement of the '327 and '513 patents. (D.I. 1) On August 4, 2017, L'Oréal U.S.A filed its motion to dismiss plaintiffs' complaint, pursuant to Rules 8(a)(2) and 12(b)(6). (D.I. 7) Plaintiffs subsequently filed their First Amended Complaint ("FAC") on August 18, 2017. (D.I. 13) In response, L'Oréal USA filed its motion to dismiss the FAC on August 23, 2017, alleging that the causes of action failed to state a claim under Rule 12(b)(6). (D.I. 15) L'Oréal S.A.

4

followed suit on October 16, 2017, filing a motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. (D.I. 23)

## III. LEGAL STANDARDS

### A. Failure to State a Claim

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[1] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject

---

[1] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### B. Personal Jurisdiction

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff

6

bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

To establish personal jurisdiction, a plaintiff must demonstrate facts sufficient to satisfy both a statutory and a constitutional requirement. With respect to the statutory analysis, the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether exercising jurisdiction over the moving defendant in this state comports with the due process clause of the United States Constitution. *See id.*; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (noting that the court must apply the law of the Federal Circuit to the constitutional inquiry in patent cases).

Pursuant to the relevant portions of Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 *Del. C.* § 3104(c)(1)-(4). With the exception of subsection (c)(4), the long-arm statute requires a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008). Subsection (c)(4) confers general jurisdiction, which requires a great

7

number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process by determining whether the plaintiff has demonstrated that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, a plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The court may exercise general personal jurisdiction consistent with due process if the plaintiff's cause of action is unrelated to the defendant's activities in the forum state, so long as the defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc.*, 772 F. Supp. at 1458.

## IV. DISCUSSION

### A. Failure to State a Claim

#### 1. Direct infringement

Pursuant to 35 U.S.C. § 271(a), a patent is directly infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent." Amendments to the Federal Rules of Civil Procedure, which took effect on December 1, 2015, abrogated Rule 84 and the Appendix of Forms, including Form 18. Under the new rules, allegations of direct infringement are subject to the pleading standards

8

established by *Twombly* and *Iqbal*, requiring plaintiffs to demonstrate a plausible claim for relief.

*See Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*, C.A. No. 15-438-LPS-CJB, 2015 WL

7833206, at \*2 n.1 (D. Del. Dec. 3, 2015). "Direct infringement requires a party to perform each

and every step or element of a claimed method or product." *Exergen Corp. v. Wal-Mart Stores,*

*Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (internal quotation marks omitted).

Plaintiffs accuse eighteen L'Oréal brands of selling infringing products because they sell

"products containing adenosine." (D.I. 13 at ¶ 31) The FAC alleges:

> On information and belief, Defendants' Accused Adenosine
> Products include, but are not limited to, the following brands with
> products containing adenosine: Biotherm; The Body Shop; Carita;
> Decleor; Garnier; Giorgio Armani; Helena Rubinstein; IT
> Cosmetics; Kiehl's; L'Oréal Paris; La Roche-Posay; Lancôme;
> Maybelline; Roger&Gallet; Sanoflore; Shu Uemura; Vichy; and
> Yves Saint Laurent.

(*Id.*) The only product the FAC identifies by name is L'Oréal Paris' RevitaLift Triple Power

Deep-Acting Moisturizer. (*Id.* at ¶ 34) L'Oréal contends that the FAC fails to properly plead

direct infringement because plaintiffs "indiscriminately target eighteen brands without providing

plausible patent infringement allegations for any products made by those brands[.]" (D.I. 16 at

9)

With respect to the Unnamed Accused Products, plaintiffs have properly pled direct

infringement. To properly allege direct infringement under *Twombly* and *Iqbal*, plaintiffs must

"plead facts sufficient to place [L'Oréal] on notice as to what [it] must defend." *McZeal v.*

*Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). L'Oréal is on notice that products

containing adenosine made by the eighteen brands specified in the FAC are accused of

infringement. From the FAC, L'Oréal should easily be able to ascertain the identity of the

Accused Products. More specific product identification will occur at the appropriate time under

9

the relevant provisions of the scheduling order once such an order is entered after resolution of

the pending motions, but such specifics are not required at this stage. The FAC contains

sufficient detail to withstand a motion to dismiss. *See, e.g., E.digital Corp. v. Micron Tech., Inc.*,

2014 WL 12488496, at \*4 (S.D. Cal. May 29, 2014) (denying motion to dismiss where the

complaint identified accused products by specific characteristics and brand names); *see also*

*Connective Licensing, LLC v. Iceland Health, Inc.*, 2014 WL 11706456, at \*3 (S.D. Fla. Feb. 10,

2014) (specific identification of accused products not necessary); *see also Anza Tech., Inc. v.*

*ARRIS Group, Inc.*, 2017 WL 1843280, at \*3 (S.D. Cal. May 5, 2017) (same; post-Form 18

abrogation).

The FAC also sufficiently pleads direct infringement with respect to L'Oréal Paris'

RevitaLift Triple Power Deep-Acting Moisturizer. The FAC alleges:

> On information and belief, use of one or more of the Accused
> Adenosine Products constitutes direct infringement of claim 1 of
> the '327 patent, as such use involves "a method for enhancing the
> condition of unbroken skin of a mammal by reducing one or more
> of wrinkling, roughness, dryness, or laxity of the skin, without
> increasing dermal cell proliferation, the method comprising
> topically applying to the skin a composition comprising a
> concentration of adenosine in an amount effective to enhance the
> condition of the skin without increasing dermal cell proliferation,
> wherein the adenosine concentration applied to the dermal cells is
> $10^{-4}$ M to $10^{-7}$."

(D.I. 13 at ¶ 38 (quoting '327 patent, col. 10:18-26)) The FAC further alleges, and L'Oréal does

not dispute, that RevitaLift Triple Power Deep-Acting Moisturizer is an adenosine-containing,

topical composition used to reduce wrinkles. (D.I. 13, Exs. 11-12) Taking the allegations in the

FAC as true, the court can reasonably infer that the use of RevitaLift Triple Power Deep-Acting

Moisturizer meets each of the limitations of the asserted claims.

L'Oréal contends that plaintiffs have failed to state a claim for direct infringement of the patents-in-suit because the FAC "does not provide an element-by-element infringement analysis." (D.I. 16 at 4) However, an element-by-element infringement analysis is required to prove direct infringement—not plead it. *See Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017) (declining to require that plaintiff plead every element of the allegedly infringed claims to withstand a motion to dismiss); *Niazi v. Pressure Prods. Med. Supplies, Inc.*, No. 16-cv-670-jdp, 2017 WL 108114, at *1 (W.D. Wis. Jan 11, 2017) ("This court will not require plaintiffs to plead direct infringement element-by-element[.]"). Though L'Oréal repeatedly references the requirements for proving direct infringement in its briefs, there is no requirement that plaintiffs "prove [their] case at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). To withstand a motion to dismiss, plaintiffs need only present "'enough facts to raise a reasonable expectation that discovery will reveal' that [L'Oréal] is liable for the misconduct alleged." *Id.* at 1341 (quoting *Twombly*, 550 U.S. at 556).

L'Oréal also argues that the FAC is deficient because plaintiffs fail to plausibly assert that the adenosine concentration applied to the dermal cells is $10^{-4}$ M to $10^{-7}$ M in the case of the '327 patent and $10^{-3}$ M to $10^{-7}$ M in the case of the '513 patent. (D.I. 22 at 4) L'Oréal asserts that "the only documents included or cited in Plaintiffs' FAC contain examples of adenosine concentrations that fall outside the claimed range" and within the range plaintiffs surrendered during prosecution of the '327 patent. (D.I. 16 at 10) Plaintiffs contend that L'Oréal's argument is inapposite because L'Oréal has misconstrued the meaning of "applied to the dermal cells" to mean the concentration of adenosine in a product, not "the concentration that is ultimately applied to the dermal cells" as plaintiffs argue is the correct construction of the phrase. (*Id.* at 6-

11

7 (emphasis original)) Because plaintiffs' argument is not contradicted by the pleadings or documents incorporated by reference when viewed in the light most favorable to plaintiffs, the FAC plausibly establishes that L'Oréal Paris' RevitaLift Triple Power Deep-Acting Moisturizer practices the claimed concentration.[2] (D.I. 9, Ex. C at 448; D.I. 13, Ex. 3 at ¶ 0068; D.I. 13, Ex. 6 at 5; D.I. 13, Ex. 8 at 6:55-7:27)

L'Oréal also faults the FAC for not referencing testing or any ingredient analysis conducted on the Accused Products. (D.I. 16 at 5; D.I. 9, Ex. A at 2) Contrary to L'Oréal's position, plaintiffs are not required to reveal privileged work product to support their factual allegations at this stage. *See DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016) ("Absent specific guidance from the Federal Circuit directing the court to front-load the litigation process by requiring a detailed complaint in every instance, the court declines to do so.") Accordingly, I recommend that the court deny L'Oréal USA and L'Oréal S.A.'s Rule 12(b)(6) motions to dismiss plaintiffs' causes of action for direct infringement of the '327 and '513 patents.

## 2. Induced infringement

To state a claim for induced infringement, a plaintiff must allege facts showing that: (1) the plaintiff's patent is directly infringed, (2) the defendant induced that infringement by "aid[ing] and abett[ing] another's direct infringement of the patent," *Rodime PLC v. Seagate*

---

[2] To the extent the parties dispute the meaning of "applied to the dermal cells," this dispute is appropriately reserved for claim construction. *See Novartis Pharma. Corp. v. Actavis, Inc.*, 2012 WL 6212619, at *7 (D. Del. Dec. 5, 2012) ("[I]f a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss . . . , the motion should be denied, because this type of analysis is inappropriate at the pleading stage."). When affording the broadest possible meaning to the disputed term and drawing all reasonable factual inferences in plaintiffs' favor at this stage, the court finds that plaintiffs have presented a plausible argument as to why dismissal on this ground is inappropriate.

12

*Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999), and (3) the defendant possessed the specific intent to encourage the third party to infringe, *see Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003).

I recommend that the court deny defendants' motions to dismiss with respect to the causes of action for induced infringement because the FAC adequately pleads direct infringement, knowledge, and intent. First, the FAC states that the acts of L'Oréal's customers, who are end-users of the Accused Products, constitute direct infringement. (D.I. 13 at ¶ 40) The FAC also pleads the requisite knowledge element. "This court has held that a complaint sufficiently pleads a defendant's actual knowledge . . . when a plaintiff alleges that a defendant previously filed papers with the PTO identifying the patents as prior art." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229-30 (D. Del. 2012). Taking plaintiffs' allegations in the FAC as true, it is plausible to infer that L'Oréal knew of the patents-in-suit because L'Oréal referenced the '327 patent and the application that issued as the '513 patent in a provisional patent application in 2002. (D.I. 13 at ¶¶ 20-21) It is also plausible to infer that L'Oréal knew that selling the Accused Products constituted patent infringement because a L'Oréal agent contacted co-inventor Dr. Dobson in fall of 2003 to discuss the patents-in-suit and obtain a license to the patented technology.[3] (D.I. 13 at ¶ 23)

---

[3] Plaintiffs also contend that a notice letter sent in March 2015 to L'Oréal's CEO is sufficient to show that L'Oréal knew its acts induced infringement. (D.I. 19 at 9) The court declines to consider this letter, however, because its contents are not quoted or specifically referenced in the FAC or attached thereto. *See Trans Video Elecs., Ltd. V. Netflix, Inc.*, No. 12-1743-LPS-CJB, 2014 WL 900929, at *3 (D. Del. Mar. 4, 2014), *adopted by* 2014 WL 1268680 (D. Del. Mar. 26, 2014) (declining to consider on a motion to dismiss a notice letter plaintiff purportedly sent to defendant where the letter and its contents were not quoted or clearly referenced in the complaint or attached thereto).

13

The FAC also plausibly pleads that L'Oréal intended to induce its customers to infringe the patents-in-suit by identifying the advertising and instructional materials provided with L'Oréal Paris' RevitaLift Triple Power Deep-Acting Moisturizer that teach customers to practice the methods claimed in the patents-in-suit. (D.I. 13 at ¶¶ 30, 34) Federal Circuit precedent establishes that, at the pleading stage, facts comparable to those alleged in the FAC are sufficient to give rise to a reasonable inference of an intention to induce customers to use a patented method. *See In re Bill of Lading*, 681 F.3d at 1341-42 (concluding that advertisements encouraging infringing uses of an accused product give rise to a reasonable inference of an intention to induce customers to use the patented method); *see also DermaFocus LLC*, 201 F. Supp. 3d at 471 (holding that the plaintiff sufficiently pleaded knowledge of alleged infringing use by the defendant, which provided instructions, promotional and educational materials to its customers). Consequently, I recommend that the court deny L'Oréal USA and L'Oréal S.A.'s Rule 12(b)(6) motions to dismiss plaintiffs' causes of action for induced infringement of the '327 and '513 patents.

### 3. Contributory infringement

"Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). "To state a claim for contributory infringement, an infringer must sell, offer to sell or import into the United States a component of an infringing product 'knowing [the component] to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non infringing use." 35 U.S.C. § 271(c); *see Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1320

(Fed. Cir. 2009). As with induced infringement, a claim for contributory infringement must contain allegations of the requisite knowledge of the patent-in-suit at the time of infringement. *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 355 (D. Del. 2009); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). The requisite knowledge for contributory infringement is the same as the knowledge for induced infringement. *Nexeon Ltd. v. Eaglepicher Techs., LLC*, No. 15-955-RGA-MPT, 2016 WL 4045474, at *4 (D. Del. July 26, 2016), *adopted by* 2016 WL 6093471 (D. Del. Oct. 18, 2016). In addition, the patentee bears the burden of proving that the accused products are a material part of the patented invention, and that they have no substantial non-infringing uses. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006); *Nexeon Ltd.*, 2016 WL 4045474, at *4.

I recommend that the court deny defendants' motions to dismiss with respect to the causes of action for contributory infringement. As explained in § IV.A.2, *supra*, plaintiffs have shown direct infringement and that L'Oréal had the requisite knowledge of the patents-in-suit. *See Nexeon Ltd.*, 2016 WL 4045474, at *4 ("the knowledge for inducement is the same for contributory infringement"). The FAC also adequately pleads that the Accused Products are a material part of the patented inventions: the "use of the Accused Adenosine Products is a material and substantial part of the invention claimed by the '327 patent." (D.I. 13 at ¶ 43); *see Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, 73 F. Supp. 3d 435, 440-41 (D. Del. 2014) (finding that the complaint sufficiently pled that the accused products were a material part of the patented invention where the complaint alleged that the defendant made, sold, or offered to sell components "which [defendant] [knew] constitute[d] a material part of the invention[.]").

Plaintiffs also adequately plead that the Accused Products have no known substantial non-infringing use. (D.I. 13 at ¶ 43) "The Federal Circuit has ruled that affirmatively pleading

15

the absence of substantial non-infringing uses renders the claim plausible if the pleadings do not undermine that allegation." *Merck Sharp & Dohme Corp. v. Teva Pharma. USA, Inc.*, No. 14-874-SLR-SRF, 2015 WL 4036951, at \*7 (D. Del. Jul. 1, 2015) (citing *In re Bill of Lading*, 681 F.3d at 1339). Because the pleadings do not undermine plaintiffs' allegation in the present case, the FAC adequately pleads that the Accused Products have no substantial non-infringing use. Accordingly, I recommend that the court deny L'Oréal USA and L'Oréal S.A.'s Rule 12(b)(6) motions to dismiss plaintiffs' causes of action for contributory infringement of the '327 and '513 patents.

## 4. Willful infringement

Pursuant to § 284 of the Patent Act, once infringement has been established, the court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. To state a claim for willful infringement, a patent owner must allege facts showing that the defendant had knowledge of the asserted patent. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). "A patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016). At the pleading stage, generalized allegations of willfulness, even without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss. *See Shire Viropharma Inc. v. CSL Behring LLC*, No. 17-414, 2018 WL 326406, at \*3 (D. Del. Jan. 8, 2018).

I recommend that the court deny defendants' motions to dismiss with respect to the causes of action for willful infringement because the FAC adequately pleads knowledge and willfulness. Plaintiffs allege that L'Oréal knew of the patents-in-suit because L'Oréal referenced the '327 patent and the application that issued as the '513 patent in a provisional patent

16

application in 2002. (D.I. 13 at ¶¶ 20-21) Plaintiffs further assert that L'Oréal knew that selling

the Accused Products constituted patent infringement because a L'Oréal agent contacted co-

inventor Dr. Dobson in fall of 2003 to discuss the patents-in-suit and obtain a license to the

patented technology. (*Id.* at ¶ 23) Taking plaintiffs' allegations in the FAC as true, it is

plausible to infer that by continuing to use and sell the Accused Products after learning of and

requesting a license to the patents-in-suit, L'Oréal intentionally or knowingly infringed the

patents-in-suit. *Bio-Rad Labs Inc. v. Termo Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del.

2017) (finding willful infringement to be sufficiently alleged where the facts allowed the court to

plausibly infer that the defendant intentionally or knowingly infringed the patent-in-suit).

Accordingly, I recommend that the court deny L'Oréal USA and L'Oréal S.A.'s Rule 12(b)(6)

motions to dismiss plaintiffs' causes of action for willful infringement of the '327 and '513

patents.

## B. Personal Jurisdiction

Plaintiffs do not allege that L'Oréal S.A. is "at home" in Delaware for purposes of

establishing general jurisdiction. As such, whether the court has personal jurisdiction over

L'Oréal S.A. turns on whether the court has specific jurisdiction over L'Oréal S.A. Rule 4 of the

Federal Rules of Civil Procedure governs the court's analysis. *See Synthes (U.S.A.) v. G.M. Dos

Reis Jr. Ind. Com. De Equip. Medico*, 563 F.2d 1285, 1293 (Fed. Cir. 2009). Plaintiffs contend

that the court's exercise of personal jurisdiction over L'Oréal S.A. is proper under Rules 4(k)(1)

and 4(k)(2) because L'Oréal S.A. has "extensive contacts with the relevant forums, both through

its admitted agent L'Oréal USA and otherwise." (D.I. 27 at 2) However, for the following

reasons, the court finds that plaintiffs fail to present sufficient evidence to meet their burden of

17

showing that L'Oréal S.A. has the minimum contacts required by the Due Process Clause that would make an exercise of personal jurisdiction proper.

## 1. Rule 4(k)(1)

Plaintiffs contend that L'Oréal S.A. is subject to the court's jurisdiction pursuant to Federal Rule of Civil Procedure Rule 4(k)(1), which provides that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). An inquiry into whether the exercise of personal jurisdiction over a defendant is proper pursuant to Rule 4(k)(1) requires the court to decide whether: (1) the forum state's long-arm statute permits service of process on defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Constitution. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411 (Fed. Cir. 2009). Because "[t]he Delaware long-arm statute . . . has been construed broadly to confer jurisdiction to the maximum extent possible under the Due Process Clause . . . the focus of [this] inquiry [will] rest[ ] on the constitutional component." *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017) (internal citation and quotation marks omitted).

Plaintiffs contend that the court's exercise of personal jurisdiction over L'Oréal S.A. comports with constitutional due process requirements under the stream of commerce and agency theories.[4] However, the record reflects that L'Oréal S.A. does not have sufficient

---

[4] Plaintiffs also argue that personal jurisdiction over L'Oréal S.A. is proper under the dual jurisdiction analysis. (D.I. 27 at 15) "[T]he dual jurisdiction analysis requires a showing of both: (1) an intent to serve the Delaware market; and (2) that this intent results in the introduction of the product into the market and that plaintiffs cause of action arises from injuries caused by that product." *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) (citing *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 371-72 (D. Del. 2008)). Plaintiffs' theory fails, however, because the record suggests that L'Oréal

18

minimum contacts with the forum to support jurisdiction under either of the theories presented by plaintiffs. Accordingly, the court lacks personal jurisdiction over L'Oréal S.A. under Rule 4(k)(1).

### (a) Stream of commerce theory

Under the stream of commerce theory, a foreign defendant can be subjected to a forum state's jurisdiction if it "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Nespresso USA, Inc.*, 263 F. Supp. 3d at 503-04 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Plaintiffs argue that personal jurisdiction is appropriate under this theory because L'Oréal S.A. intends for its products to be sold in the United States through its subsidiary L'Oréal USA. (D.I. 27 at 15) L'Oréal S.A. does not dispute that the Accused Products are sold in Delaware and throughout the United States, but contends that it is not responsible for introducing the Accused Products, which are made and sold by L'Oréal USA in the United States, into the stream of commerce. (D.I. 29 at 5)

The record before the court does not support plaintiffs' argument that L'Oréal S.A. introduced the Accused Products into the stream of commerce. *See id.* Rather, the record suggests that L'Oréal USA introduced the Accused Products into the stream of commerce. (D.I. 25 at ¶ 4) (stating that L'Oréal USA "manufactures and distributes its own products[.]") L'Oréal S.A.'s corporate structure is not sufficient to establish personal jurisdiction under the stream of commerce theory because "mere ownership of a subsidiary does not justify the

USA—not L'Oréal S.A.—intended to serve the Delaware market and introduced the Accused Products into Delaware. *See* § IV.B.1.a, *infra*; *see also Belden Techs., Inc.*, 829 F. Supp. 2d at 268 (finding that plaintiff's dual jurisdiction theory failed as to the foreign defendant because the evidence showed that the American defendant introduced the accused products into the Delaware market, not the foreign defendant).

19

imposition of liability on the parent." *Nespresso USA, Inc.*, 263 F. Supp. 3d at 504 (internal quotation marks and citation omitted). Instead, plaintiffs must present evidence showing that the parent company is responsible for introducing the Accused Products into the U.S. or Delaware markets. *See id.* (holding that a plaintiff must show that the defendant parent corporation is "responsible for introducing the [accused products] into the stream of commerce, and not simply that a subsidiary within the United States introduced the [accused products]."). Similar to the circumstances presented in *Nespresso*, the record before the court does not indicate that L'Oréal S.A. had a role in the design, manufacture, marketing, or sale of the Accused Products. (D.I. 13 at ¶ 32-33)

Plaintiffs allege that L'Oréal S.A. is responsible for introducing the Accused Products into the United States market because it spearheads L'Oréal Group, and L'Oréal Group researchers developed the adenosine-containing skincare products sold in the United States. (D.I. 27 at 7) However, plaintiffs do not specifically tie the development or sale of the Accused Products to L'Oréal S.A. As such, plaintiffs cannot show that L'Oréal S.A. "placed—or otherwise influenced the placement of—the [accused products] into either the United States market generally or the Delaware market specifically." *Nespresso USA, Inc.*, 263 F. Supp. 3d at 504. Accordingly, plaintiffs' stream of commerce theory fails.

Plaintiffs also contend that, by owning United States patents and suing to enforce its patents in this and other United States courts, L'Oréal S.A. has purposefully availed itself of the privilege of conducting activities in the forum state. (D.I. 27 at 10) However, the court has repeatedly held that "ownership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state." *Nespresso USA, Inc.*, 263

F. Supp. 3d at 504 (internal quotation marks and citation omitted). As such, plaintiffs cannot prevail on their stream of commerce theory.

## (b) Agency theory

Plaintiffs contend that L'Oréal S.A. is subject to the court's jurisdiction under the agency theory as well. (D.I. 27 at 2) Under this theory, a subsidiary corporation's specific jurisdictional acts are imputed to its parent corporation to satisfy the jurisdictional requirements "where the subsidiary acts on the parent's behalf or at the parent's direction." *Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) (internal quotation marks and citation omitted). The existence of an agency relationship depends on "the degree of control [ ] the parent exercises over the subsidiary." *Applied Biosystems, Inc.*, 772 F. Supp. at 1463. To determine whether the parent has the requisite control over the subsidiary to establish an agency relationship, a court will consider the following factors: "the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Id.*

Plaintiffs fail to establish personal jurisdiction over L'Oréal S.A. under the agency theory. Plaintiffs contend that L'Oréal S.A. and its subsidiaries act as a "unified entity" because "L'Oréal Group [(the overarching entity consisting of L'Oréal S.A. and its subsidiaries)] discloses the financial results of the entire Group in a consolidated . . . report, which includes L'Oréal USA's financial results." (D.I. 27 at 5) However, "filings [by a parent corporation] presenting the assets, liabilities, and financial earnings of its subsidiaries as one indistinguishable whole do not prove agency." *Nespresso USA, Inc.*, 263 F. Supp. 3d at 505 (internal quotation marks and citation omitted).

Plaintiffs also argue that L'Oréal S.A. and L'Oréal USA "operate as a single entity, particularly for the purposes of designing, manufacturing, and selling the Accused Adenosine Products in the United States." (D.I. 27 at 4) As support, plaintiffs again point to L'Oréal Group's 2016 Annual Financial Report, which recognizes L'Oréal S.A. as the entity responsible for the entire group's strategic, scientific, industrial, and marketing coordination. (*Id.* at 5; *see* D.I. 28, Ex. 6 at 37) Plaintiffs also point to a three-day business trip to New York by L'Oréal Group's Board of Directors in June 2016 to review L'Oréal USA's strategy and L'Oréal Group's business development opportunities in the United States. (D.I. 27 at 5; *see* D.I. 28, Ex. 6 at 64) However, these arguments fail to establish that L'Oréal S.A. had control over L'Oréal USA's day-to-day management and matters of patent infringement. *See Nespresso USA, Inc.*, 263 F. Supp. 3d at 505.

Evidence presented by L'Oréal S.A. refutes plaintiffs' allegation that L'Oréal S.A. and L'Oréal USA operate as a single entity. Specifically, "L'Oréal USA maintains separate licensing and distribution contracts, manufactures and distributes its own products, has its own board of directors, issues separate financial statements, files separate tax returns, and maintains its own workforce from L'Oréal S.A." (D.I. 25 at ¶¶ 3-4) Moreover, L'Oréal USA's marketing, advertising, customer relations, and "Research and Innovation" departments are separate from L'Oréal S.A. (*Id.* at ¶ 4) While L'Oréal USA admits that it "receives overall strategic guidance from L'Oréal S.A.," it still "operates independently from its parent." (*Id.*) L'Oréal S.A.'s overall strategic guidance is not sufficient evidence of agency, as it does not establish that L'Oréal S.A. controlled L'Oréal USA regarding matters of patent infringement. *See Nespresso USA, Inc.*, 263 F. Supp. 3d at 505. Because plaintiffs' allegation that L'Oréal S.A. and L'Oréal

22

USA operate as a single entity controlled by L'Oréal S.A. is not supported by the record, plaintiffs' agency theory fails.

Plaintiffs also argue that an agency relationship exists because L'Oréal Group once referred to L'Oréal USA (formerly known as "Cosmair") as "an agent in the United States." (D.I. 27 at 6; *see* D.I. 28, Ex. 6 at 13) However, this fact is not dispositive, as "[o]ne may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose." *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014). On its own, this statement by L'Oréal Group does not establish that L'Oréal Group controlled L'Oréal USA regarding matters of patent infringement related to this case.

Plaintiffs further argue that jurisdiction is proper over L'Oréal S.A. because L'Oréal Paris' RevitaLift Triple Power Deep-Acting Moisturizer is a L'Oréal Group brand, not a L'Oréal USA brand. (D.I. 27 at 6-7) L'Oréal S.A. maintains that this is not the case. (D.I. 24 at 3) Plaintiffs present a number of Internet documents that purportedly show that L'Oréal Group— not L'Oréal USA—is responsible for creating and selling L'Oréal Paris products. (D.I. 27 at 7; *see* D.I. 28, Ex. 4 at 7; D.I. 28, Ex. 9 at 3; D.I. 28, Ex. 10 at 6; D.I. 28, Ex. 4 at 27; D.I. 28, Ex. 6 at 185, 238-240, 244; D.I. 28, Ex. 11) However, plaintiffs' own evidence contradicts the point they attempt to prove because the Internet document entitled "L'Oréal USA Facts and Figures" explicitly lists L'Oréal Paris as a L'Oréal USA brand. (D.I. 28, Ex. 7 at 1-2 ("L'Oréal USA's brands are: . . . L'Oréal Paris . . ." )) Because the present record indicates that L'Oréal Paris is a L'Oréal USA brand and, as previously explained, L'Oréal USA is not an agent of L'Oréal S.A. such that its actions can be imputed to L'Oréal S.A., personal jurisdiction over L'Oréal S.A.

23

cannot be predicated on the sale of L'Oréal Paris products. For these reasons, plaintiffs have failed to establish personal jurisdiction over L'Oréal S.A. under Rule 4(k)(1).

## 2. Rule 4(k)(2)

Plaintiffs also contend that Federal Rule of Civil Procedure 4(k)(2) gives the court personal jurisdiction over L'Oréal S.A. (D.I. 27 at 8) Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes (U.S.A.)*, 563 F.3d at 1295. Similar to the Rule 4(k)(1) analysis, personal jurisdiction under Rule 4(k)(2) must comport with constitutional due process requirements. *See Nespresso USA, Inc.*, 263 F. Supp. 3d at 506. As previously discussed in § IV.B.1, *supra*, plaintiffs have failed to demonstrate that L'Oréal S.A. has sufficient minimum contacts under either the stream of commerce or agency theories. Because plaintiffs have not demonstrated L'Oréal S.A.'s minimum contacts have not been established, personal jurisdiction does not comport with constitutional due process requirements, and cannot be predicated on Rule 4(k)(2). *See id.*

## 3. Jurisdictional Discovery

Plaintiffs have also failed to present sufficient factual allegations to justify jurisdictional discovery. Generally, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir.2003) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997). "A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (citing *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 459 (D. Del. 2009)). Thus, in order to justify jurisdictional discovery, the plaintiff must present "factual allegations that suggest 'with reasonable

24

particularity' the possible existence of the requisite 'contacts between [the defendant] and the forum state.'" *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)).

In the present case, plaintiffs' factual allegations are insufficient to warrant jurisdictional discovery. Plaintiffs assert that jurisdiction over L'Oréal S.A. is proper under the stream of commerce and agency theories and based on L'Oréal S.A.'s own contacts with the forum. As previously mentioned, *see* § IV.B.1, *supra*, plaintiffs' arguments that jurisdiction over L'Oréal S.A. is proper are contradicted by plaintiffs' own proffered evidence. (D.I. 28, Ex. 7). Plaintiffs' allegations fail to assert with reasonable particularity facts showing that L'Oréal S.A. might be subject to personal jurisdiction under Rule 4(k)(1) or (2). Therefore, I recommend that the court deny plaintiffs' request for jurisdictional discovery.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court: (1) deny L'Oréal USA's Rule 12(b)(6) motion to dismiss (D.I. 15); (2) deny L'Oréal S.A.'s Rule 12(b)(6) motion to dismiss (D.I. 23); and (3) grant L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss (D.I. 23).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: November 13, 2018

Sherry R. Fallon
United States Magistrate Judge